Robert D. JENKINS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 16494.

Missouri Court of Appeals,
Southern District,
Division One.

April 25, 1990.

Rosalynn Koch, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

This is an appeal from the denial of a motion for post-conviction relief filed pursuant to Rule 24.035. This court affirms.

Robert D. Jenkins (movant) was charged in the underlying criminal case with rape (§ 566.030),[1] sodomy (§ 566.060), burglary in the first degree (§ 569.160), and robbery in the second degree (§ 569.030). He was charged as a prior offender. § 558.016.2. The criminal charges originated in Lawrence County. Following a change of venue to Stone County, movant pleaded guilty to each of the offenses. He was sentenced, in accordance with a negotiated plea agreement, to confinement in the custody of the Department of Corrections for terms of 15 years for rape, 15 years for sodomy, 5 years for burglary in the first degree, and 5 years for robbery in the second degree. The sentences were ordered to be served consecutively. Movant filed a motion for post-conviction relief. An evidentiary hearing was held, written findings of fact and conclusions of law filed, and judgment entered denying that motion.

Movant claims that he received ineffective assistance of counsel in the underlying criminal case. He claims that the attorney who represented him in the criminal case failed to adequately investigate his case and failed to obtain a pretrial lineup identification. Movant alleges that he was, as a result of those deficiencies, deprived of defenses of alibi and mistaken identity.

■ Movant has the burden of proving by a preponderance of the evidence the grounds he asserts for post-conviction relief. Rule 24.035(h). This court's review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(j).

■ By pleading guilty, movant waived all errors except those which affect the voluntariness of the pleas or the understanding with which the pleas were given. Any claim of ineffective assistance of counsel is immaterial except to the extent it impinged upon the voluntariness and knowledge with which the plea of guilty was made. *Freeman v. State*, 691 S.W.2d 414, 415 (Mo.App.1985); *Clark v. State*, 690 S.W.2d 828, 829 (Mo.App.1985).

■ In movant's brief he emphasizes that his pleas of guilty were "Alford pleas," i.e., that his pleas of guilty did not include admissions of guilt.[2] In accepting movant's pleas of guilty, the trial court found that movant consented to the imposition of prison sentences, and that his con-

---

1. All citations to statutes are to RSMo 1986 unless otherwise stated.

2. An "Alford plea" is a plea of guilty based upon certain precepts enunciated in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). *Alford* held that where there was strong evidence of guilt, a defendant is not constitutionally required to admit commission of the criminal act in order to plead guilty.

sent was given voluntarily, understandingly, and knowingly. The trial court determined that the record in the underlying criminal case contained strong evidence of actual guilt and that, therefore, there was a sufficient factual basis for the guilty pleas. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). A plea of guilty based upon the principles announced as constitutionally acceptable in *Alford* stands on equal footing with one in which an accused specifically admits the commission of the particular act charged. *See Watkins v. State Bd. of Reg. for Healing Arts*, 651 S.W.2d 582, 583 (Mo. App.1983).

The offenses to which movant pleaded guilty occurred between 4:00 a.m. and 4:30 a.m. on February 22, 1987. They were committed at the victim's home located "about a mile and three-quarters southeast of Aurora in Lawrence County." The victim claimed she had scratched her attacker's face and back. The victim stated that her attacker had a beard.

At the evidentiary hearing movant, on his motion for post-conviction relief, testified that he instructed his attorney in the criminal case to contact Brenda Wrinkle, Teresa Smith, Tammy Smith, Richard Smith, and movant's mother. Movant asserted that these persons could have provided an alibi for him during the time the offenses were committed; that he believed his attorney had talked to these witnesses when the attorney advised him to plead guilty; that the attorney had not talked to the witnesses at that time; that had he known his attorney had not talked to them, he would not have pleaded guilty. Movant claims that his attorney was derelict in not talking to the witnesses before advising movant to plead guilty and that this resulted in movant's pleas of guilty being involuntary.

Brenda Wrinkle, Richard Smith, and movant's mother, Janice Jenkins, testified at the evidentiary hearing. Inquiry was made of each regarding any knowledge they had of movant's whereabouts the morning of February 22, 1987, and whether they had observed scratches on his person.

Brenda Wrinkle (Brenda) is movant's aunt. She testified that she saw movant the morning of February 22, 1987. She stated that movant came to her house between 6:00 a.m. and 6:30 a.m. and that they went to a restaurant for breakfast. They were at the restaurant approximately 30 minutes. When they left, they took a friend who they had encountered at the restaurant, a Penny Butts, and her two children to the friend's apartment. After that Brenda and movant went to a laundry. They spent about two hours there. Brenda testified that she did not see any scratches or red marks on movant's face. She did not remember if movant had a beard or was clean shaven at the time. She thinks he had a moustache. Movant frequently had a beard, but he shaved it off from time to time.

Richard Smith (Richard) is movant's cousin. He testified that he saw movant the morning of February 22, 1987, "[a]round 4:00 in the morning." It may have been 4:30. Richard saw movant in Aurora at a four-way stop. Movant was driving a black automobile. Richard did not remember seeing anyone in the car with movant. He later saw movant return from the direction movant was headed when Richard first saw him. He did not remember how much time elapsed between the two times he saw movant.

On cross-examination Richard testified that he had been convicted of the crime of stealing and had been incarcerated for one day in the Lawrence County Jail with movant. This was sometime after the date when Richard had seen movant. Richard also acknowledged that he did not know the date when he saw movant driving the black car. He did remember that it was on a weekend sometime before June 1987. Richard had told movant about this while the two of them were incarcerated.

Movant's mother, Janice Jenkins (Janice), testified that on the date movant was arrested (the date of the offenses), she had seen him in the early morning hours. She said it was "around 4:27." She testified that movant came to her bedroom door and woke her up. She looked at a digital clock

beside her bed. Janice said she had an opportunity to observe movant, to observe his face, although unclearly. Later that morning, she had an opportunity to see him clearly. She saw no scratches on movant's face.

Neither Teresa Smith (Teresa) nor Tammy Smith (Tammy) testified. However, Victor Head, the attorney who represented movant in the criminal case, testified that Teresa and Tammy had given statements to the police officer who had investigated the case. The attorney reviewed those statements with movant during the time he represented movant. The statements were in writing and signed by the respective witnesses. The attorney testified that he had copies of all investigation reports that the law enforcement officers had prepared. The copies of the reports were obtained as a result of a request for disclosure that was filed on behalf of movant. Copies of the reports had been furnished movant and reviewed with him. Movant's attorney concluded, based upon a review of the statements given by witnesses to the police, that "[t]here was no witness that ... would constitute what would be considered an alibi, 'alibi witness,' that could account for the Defendant's [movant's] whereabouts at the exact time that this was supposed to have occurred." Movant's attorney testified that he had conferred with movant at least 20 times according to his records. He had discussed all aspects of the case, including motions that might be filed and defenses. He discussed with movant the particular fact that movant was originally charged as both a prior offender (§ 558.-016.2) and a persistent sexual offender (§ 558.018.2) and the significance of those statutes with respect to the pending charges and the ranges of punishment.[3] The attorney had inspected photographs of movant taken the day of movant's arrest which "showed some red marks on his face and back."

Movant's attorney testified that he had been told by movant that movant's mother would arrange for Tammy Smith and Teresa Smith to come to his law office and talk to him. He wrote letters to them asking that they come to his office regarding movant's case. A person the attorney understood to be their mother called and made an appointment for them to come to the attorney's office to see him. The appointment was scheduled for November 4, 1987. Tammy Smith and Teresa Smith failed to appear.

Movant's attorney received a telephone call from movant while he and Richard Smith were incarcerated. Movant told his attorney that Richard and a person identified as Mike McNeal saw movant riding around in Aurora about 4:00 a.m. the night the offenses were committed. Movant's attorney told movant to have Richard and McNeal call or come by his office after Richard was released from jail. Movant, according to his attorney, said he would furnish Richard with the attorney's address and telephone number and have Richard contact the attorney. Richard did not contact the attorney.

Movant's attorney had knowledge that two coats were found at the crime scene which matched descriptions of coats movant was wearing before the offenses to which he pleaded guilty occurred; that the criminal investigator of the Lawrence County Sheriff's Department reported that movant had made an oral confession to having committed the offenses; that movant matched the description that the victim gave of her attacker; that the automobile at the scene of the crime matched the description of the automobile movant was using on the date the offenses were committed; that a .410 gauge shotgun was stolen from the victim's residence; that movant was seen later on the date the offenses were committed with a gun, the description of which was consistent with characteristics of a .410 shotgun; that statements were given by Teresa Smith and Tammy Smith to investigators which

---

**3.** If a defendant is determined to be a "prior offender," the court, without submitting the question of punishment to a jury, assesses punishment. §§ 557.036.2(2) and 558.016.1. If a defendant is determined to be a "persistent sexual offender," the term of imprisonment is not less than 30 years to be served without probation or parole. § 558.018.

stated that they observed movant the date of the offenses, after the time the offenses were committed, and, at that time, movant had some scratches and red marks on his face and complained of a knot or bruised area on one knee; that a statement was given by an individual named Jimmy Lynn Smith consistent with the statements of Teresa Smith and Tammy Smith.

It was with the background recited above that movant's attorney recommended that movant accept a negotiated plea agreement which included the filing of an amended information that charged movant as a prior offender, but not as a persistent sexual offender. The state agreed to recommend sentences of 15 years for the offense of rape, 15 years for the offense of sodomy, 5 years for the offense of burglary in the first degree, and 5 years for the offense of robbery in the second degree, all to run consecutively.

■ In order to demonstrate that movant's attorney in the underlying criminal case was ineffective for failing to interview particular witnesses, movant bears the burden of proving that the witnesses could have been located through a reasonable investigation, that they would have testified, if called, and that their testimony would have presented a viable defense. *State v. Ryun,* 784 S.W.2d 636, 639 (Mo. App.1990); *Kennedy v. State,* 771 S.W.2d 852, 857–58 (Mo.App.1989). The trial court that heard and determined movant's post-conviction motion found that movant failed to meet that burden. That court found that further interviewing of Richard Smith, Janice Jenkins, Brenda Wrinkle and Teresa Smith (as well as Mike McNeal) would not have established a viable alibi defense or defense of mistaken identity. The court found that movant's attorney in the criminal case conferred with Janice Jenkins, movant's mother, on multiple occasions and that, due to her relation to movant, much of her testimony was not credible. It concluded that movant's attorney in the criminal trial effectively represented movant; that there was a factual basis for movant's pleas of guilty based upon the principles announced in *Alford;* and that movant act-

ed knowingly and intelligently in accepting the plea bargain rather than risk the outcome of a trial that included the risk of receiving substantially longer sentences.

As previously noted, this court's review is limited to determining whether the findings and conclusions of the trial court are clearly erroneous. Those findings and conclusions are clearly erroneous only if the appellate court is left with the firm belief that a mistake has been made after reviewing the record. *Ryun, supra; Short v. State,* 771 S.W.2d 859, 863 (Mo.App.1989). The findings of the trial court regarding movant's attorney's investigation are not clearly erroneous. The investigation which movant's attorney made in the criminal case was done, under the existing facts and circumstances, with the customary skill and diligence that a reasonably competent attorney would perform. *Davis v. State,* 761 S.W.2d 636, 637 (Mo.App.1988).

■ The trial court that heard and determined movant's post-conviction motion did not, however, enter a finding with respect to the effect, if any, of movant's attorney's failure to personally contact and interview Tammy Smith. Tammy Smith's involvement appears, from a review of the record on appeal, virtually the same as that of Teresa Smith's involvement. Movant's claim that the attorney who represented him in the criminal case was derelict in not contacting Tammy Smith is not supported by substantive evidence. For that reason, the failure to make a specific finding of fact or conclusion of law with respect to the effect of the attorney's failure to contact Tammy falls within one of the limited exceptions to the requirement that specific findings of fact and conclusions of law are required on all issues. *Gawne v. State,* 729 S.W.2d 497, 500–01 (Mo.App.1987); *Smith v. State,* 674 S.W.2d 638, 642 (Mo. App.1984); Rule 24.035(i). The record on appeal is void of substantive evidence in support of the claim that further interviewing of Tammy Smith would have established a viable alibi defense or defense of mistaken identity. No error resulted upon failure to make a finding or conclusion on this point.

■ The remaining issue which movant presents on appeal is his claim that the trial court that heard movant's post-conviction motion erred in finding movant's attorney in the criminal case to not have been ineffective for failure to further interview the victim and for failure to obtain a pretrial lineup in support of a defense of mistaken identity. Movant asserts that this deficiency affected the voluntariness and understanding of his pleas of guilty.

The trial court found that movant's attorney in the criminal case was not ineffective for failing to conduct an in-person or photographic lineup because such matter involved trial strategy and there was no evidence that a lineup would have caused a different result. The trial court found that movant failed to sustain the burden of proving that further interviewing of the victim would have caused a different result in movant's proceedings. The trial court further found that movant's attorney adequately cross-examined the victim at the time of the preliminary hearing regarding her identification of movant.

These findings are not clearly erroneous. Since movant entered guilty pleas, in order for there to have been ineffective assistance of counsel, movant must show that his attorney was deficient and that there was a reasonable probability, but for the trial attorney's errors, that movant would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Simons v. State,* 719 S.W.2d 479, 480 (Mo.App.1986).

The attorney who represented movant in the criminal case testified that the victim had positively identified movant at preliminary hearing. His testimony was that the victim had emphasized "you don't forget a face." There was substantial evidence that the victim had seen movant on the day before the crimes were committed. Movant was fishing on the victim's property. Movant's assertion that the victim would not have identified him if there had been a pretrial lineup is idle speculation. Likewise, there is no showing that the victim would have provided any additional information helpful to movant had the victim been interviewed by movant's attorney. At movant's guilty plea hearing, movant heard a detailed recitation by the prosecuting attorney as to the evidence that would be presented if the case was tried. Movant was admonished to listen closely to the statement by the prosecuting attorney in the event he had questions. That recitation of anticipated evidence included the statement:

The State's evidence would further be that the victim, in fact, was not given any photo lineup or any actual lineup including the Defendant, but that on her own volition in the preliminary hearing positively identified the Defendant as the one who attacked her.

Thereafter, movant was asked if he understood that this would be the evidence the state would present against him at a trial. He answered, "Yes, sir, Your Honor." Movant, at that time, acknowledged that his attorney had done nothing in representing him which he believed was not proper. Movant acknowledged that he had been afforded sufficient time to discuss his case with his attorney. He was asked, "Are you satisfied with the services that Mr. Head has rendered in attempting to defend you in these cases?" Movant answered, "Yes, sir, Your Honor." Movant stated that he had no complaints or criticism about the manner in which he had been represented. Even if the failure to obtain a lineup identification or the failure to interview the victim could be deemed as counsel's errors (which this court does not find), there is no reasonable probability shown that had such a lineup occurred and had such an interview taken place, movant would not have pleaded guilty and insisted on going to trial. The judgment denying movant's post-conviction motion filed pursuant to Rule 24.035 is affirmed.

CROW, P.J., and PREWITT, J., concur.