Samuel L. RICE, Plaintiff,

v.

John I. BARNES, et al., Defendants.

No. 95–0756–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

Jan. 15, 1997.

Samuel L. Rice, Kansas City, MO, pro se.

Jon K. Lowe, Kansas City, MO, Sulaimon Adebayo Hassan, Kansas City, KS, for Samuel L. Rice.

Galen P. Beaufort, Kathleen A. Hauser, City Attorney's Office, Kansas City, MO, for City of Kansas City, MO, Richard Berkley, Emmanuel Cleaver.

Dale H. Close, Lisa Sander Morris, Kansas City Police Dept., Legal Advisor's Office, Kansas City, MO, for Steven Bishop, Sgt. Molloy, Cord Laws.

## ORDER GRANTING SUMMARY JUDGMENT

LAUGHREY, District Judge.

Pending before the Court is Defendants John Barnes' ("Officer Barnes"), Cord Laws' ("Officer Laws"), George McCall's ("Officer

McCall") and Rick Ludwig's ("Officer Ludwig") Motion for Summary Judgment, together with Suggestions in Support, filed on June 13, 1996. Plaintiff Samuel L. Rice ("Mr. Rice") filed Suggestions in Opposition on September 4, 1996, to which Defendants filed Reply Suggestions on September 10, 1996.[1] The primary issue presented by Defendants' Summary Judgment Motion is whether the individual Defendants are entitled to qualified immunity with respect to Plaintiff's claims.

After due consideration of the above, and for the reasons set forth below, Defendants' Motion is granted.

## I. Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prod. Corp. v. First Interstate Commercial Corp.,* 950 F.2d 566, 569 (8th Cir.1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (*quoting*

*First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

With these principles in mind, the Court turns to an examination of the facts.

## II. Factual Background

Pursuant to Local Rule 13(G), Defendants' Suggestions in Support begin with separately numbered paragraphs of concise statements of uncontroverted facts. Each fact is supported by reference to a specific part of the record where the fact is established. All facts set forth in Defendants' statement of uncontroverted facts are deemed admitted for the purposes of summary judgment unless specifically controverted by Plaintiff. Local Rule 13(G)(1). Accordingly, the facts set forth in Defendants' Suggestions in Support which are uncontroverted, together with those uncontroverted facts set forth in Plaintiff's Suggestions in Opposition, form the basis of the Court's understanding of the factual background of this case.

On August 23, 1990, Defendants, and others, forcibly entered the residence at 3410 Brooklyn, Kansas City, Missouri, pursuant to a search warrant signed by the Honorable John R. O'Malley, Circuit Judge of Jackson County, Missouri. [Pl.'s Ex. 7.] The search warrant authorized the Officers to search for and seize marijuana, U.S. currency in close proximity to narcotics or pre-recorded advanced Street Narcotics Unit funds, papers and documents relating to narcotic trafficking, firearms and narcotics paraphernalia. The search warrant was issued based upon a previous undercover drug buy at the residence.

■■■ The documents before the Court do not indicate what affidavit(s) or other evidence was submitted to Judge O'Malley in support of the application for the search warrant. The record does contain information relating to a previous drug sale at the residence on August 14, 1990, the day before the application for the search warrant was submitted. The Investigative Report of Officer

---

1. Officer Lewis has filed a separate Motion for Summary Judgment which the Court will rule upon by separate Order.

Lewis states that on August 14, 1990, at 11:18 p.m., pursuant to a hotline report of narcotics trafficking, Officer Lewis proceeded to 3410 Brooklyn, Kansas City, Missouri. [Pl.'s Ex. 6.][2] At the residence, in exchange for twenty dollars ($20.00), an unknown black male gave Officer Lewis two bags of a green leafy substance. A field test revealed that the substance in the bags "reacted positive to the presence of THC, the active ingredient in marijuana." [Pl.'s Ex. 6.] The Investigative Report identifies the seller of the substance as an "UNKNOWN B/M, 6'2", 245 lbs., 25–30 years of age, medium complexion, afro hair style." [Pl.'s Ex. 6.]

In executing the search warrant, the parties dispute whether the Officers announced that they were the police and that they had a search warrant prior to entering the residence. Plaintiff alleges that he was in the bathtub, which is located in the back of the house, with the radio playing, when he heard knocking and/or banging on the front door. [Def.s' Ex. C at pp. 36–38.] According to the Investigative Report signed by Officer Ludwig, the Officers yelled "Police Officers" as they used a battering ram to gain access into the residence. [Pl.'s Ex. 7—Pl.'s Opp. to Officer Lewis' Motion for Summary Judgment.] Similarly, Officer Ludwig's Affidavit provides that the Officers announced that they were the police and that they had a search warrant prior to entering the residence. [Def.s' Ex. A at ¶ 4.] Plaintiff alleges after he heard the banging, he grabbed his rifle to protect himself "from the invaders and to scare them away." [Pl.'s Ex. 9 at ¶ 6.]

Officer Barnes was the first Officer to enter the residence. Upon his entry, Officer Barnes alleges he saw the Plaintiff inside the residence pointing a rifle at him and another Officer. The parties dispute whether or not the Plaintiff fired the rifle at the Officers. Officer Barnes alleges that Plaintiff fired a single shot, but did not hit anyone. Plaintiff denies he fired the rifle. It is undisputed that Officer Barnes fired three (3) shots at the Plaintiff and struck him one (1) time in the face, near his cheek. Additionally, Officer Colley fired one (1) time at Plaintiff but did not hit him.[3] Plaintiff was the only person in the residence when the Officers entered the premises.

At the time of the shooting, Officers Laws, McCall and Ludwig were outside the residence and not one of them fired their weapons while they were at the residence.

Following the incident on August 23, 1990, Plaintiff was charged with a Class C Felony of Selling Marijuana on August 14, 1990[4], and a Class D Felony of Exhibiting a Weapon in a Rude, Angry and Threatening Manner on August 23, 1990. On March 11, 1991, pursuant to a plea agreement, Plaintiff pleaded guilty to the charges of Sale of a Controlled Substance and Unlawful Use of a Weapon. At the conclusion of Plaintiff's testimony, the Honorable Jon R. Gray made the following findings:

The Court finds in each case that the Defendant [Mr. Rice] understands the charges against him and the consequences of the plea. He's been advised of his rights and understands them and voluntarily, freely and intelligently waives those

---

2. The Court notes that a business records affidavit was not submitted to the court with the copies of the various business records. In ruling on a motion for summary judgment, the district court may consider only admissible evidence, and accordingly, a party may not rely upon hearsay evidence to support and/or oppose a motion, without a showing of admissibility. *Walker v. Wayne County, Iowa*, 850 F.2d 433, 434–35 (8th Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 783 (1989). "Nevertheless, if a party fails to challenge hearsay evidence submitted to the court, the court does not commit error in considering such evidence." *Id.* at 435 (*citing Dautremont v. Broadlawns Hosp.*, 827 F.2d 291, 294–95 (8th Cir.1987); *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir.1987)).

Accordingly, because Defendants have not challenged the admissibility of the records submitted by Plaintiff in support of his opposition, the Court will consider the evidence in ruling on the motion.

3. Although Officer Colley is a named Defendant in this case, he has not yet been served.

4. The Court assumes that during the plea proceedings, at one point, the Judge mistakenly referred to the sale of marijuana as having occurred on May 14, 1990, rather than August 14, 1990. [Tr. at p. 9.] Based upon all of the evidence before the Court, the Court assumes the correct date is August 14, 1990. [Tr. at p. 11.]

rights. He's been able to understand and assist his attorney. He's been ably and competently assisted by counsel. There's no mental disease or defect of defense.... Accordingly, the Court finds beyond a reasonable doubt the defendant [Mr. Rice] is guilty of sale of controlled substance, a class C felony and unlawful use of a weapon, a class D felony.

[Def.s' Ex. D—Tr. at pp. 19–20.] [5]

The Defendants in this case are the Officers who executed the search warrant of Plaintiff's residence on August 23, 1990, which include Officers Barnes, Colley, Laws, McCall and Ludwig. Officer Lewis, the officer involved in the alleged drug sale on August 14, 1990, and whose affidavit, according to Plaintiff, served as the basis for the search warrant for Plaintiff's residence, is also a Defendant. Plaintiff's Amended Complaint is in two counts. Count I alleges a claim under 42 U.S.C. § 1983 for unreasonable search and seizure and unreasonable deprivation of freedom against all of the Defendants. Count II alleges a claim under 42 U.S.C. § 1983 for excessive force against all of the Officers, except Officer Lewis. The Amended Complaint does not specify whether the lawsuit is brought against the Officers in their individual or their official capacities. The Court will treat the action as one against the Officers in their individual capacities.[6]

### III. Title 42 U.S.C. § 1983— Qualified Immunity

Title 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or us-

age, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish (1) that the defendant(s) deprived him/her of a right secured by the Constitution or laws of the United States; and (2) that such deprivation was committed by person(s) acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980) (citation omitted); *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996).

There is no dispute with respect to the second element. The parties agree that the actions challenged by Plaintiff were undertaken by the Officers under color of state law. [Am. Compl. at ¶¶ 3, 17 and 20; Answers at ¶ 3.] Focusing upon the first element, the Court is required to initially examine whether or not the Plaintiff has alleged the violation of a clearly established constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991). The Court finds that Plaintiff has plead a constitutional violation. Plaintiff's Amended Complaint alleges that Defendants entered his residence, searched the premises, seized his property and arrest-

---

**5.** Plaintiff does not dispute the fact that a guilty plea was entered by the Court, however, he argues that the guilty plea was "involuntary because he was suffering from memory loss at the time of the plea and he did not understand what he was doing." [Pl.'s Opp. at p. 5.] There is no evidence before the Court as to whether or not Plaintiff has in the past, or is currently, legally challenging his guilty plea.

**6.** Suits against officials in their individual capacities seek to impose liability for actions taken under color of state law. In such cases, the plaintiff is required to show that the officials caused a deprivation of a federal right. In contrast, suits against officials in their official capacities require a showing that an official policy or

custom caused a constitutional violation. *See Clay v. Conlee*, 815 F.2d 1164, 1169–70 (8th Cir.1987); *Rollins v. Farmer*, 731 F.2d 533, 535 (8th Cir.1984). Plaintiff in this case has not alleged the existence of any policy or custom as the basis for the alleged constitutional violation. Additionally, because the Defendants are asserting qualified immunity as a defense, and Plaintiff has not argued that the doctrine is inapplicable, the Court assumes that the parties are treating the case as one brought against the Defendants in their individual capacities. *See Rollins*, 731 F.2d at 536 (Qualified immunity "is available only to individuals sued in their individual capacities and not individuals sued in their official capacities.")

ed him, all without probable cause. [Am. Compl. at ¶¶ 4–5.] Plaintiff further alleges that the Defendants used excessive force in violation of the Fourth, Eighth and Fourteenth Amendments. [Am. Compl. at ¶ 20.]

Next, the Court must determine whether the doctrine of qualified immunity applies. This affirmative defense has been raised by the Defendants and, if applicable, will protect the Defendants from suit as well as liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) ("The entitlement is an immunity from suit rather than a mere defense to liability.")

## A. The Doctrine of Qualified Immunity

 The doctrine of qualified immunity protects government officials from civil suits arising from their discretionary functions,[7] when their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is clearly established if "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, "the unlawfulness must be apparent" to the official. *Id.* (citations omitted). The application of qualified immunity generally turns on the "objective legal reasonableness" of the action. *Id.* at 639, 107 S.Ct. at 3038–39 (*citing Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738–39).

 Sometimes, as in this case, there is a factual dispute about what the officials actually did. Plaintiff alleges that the Defendant Officers did not identify themselves, did not tell the Plaintiff they were executing a search warrant, and did not instruct the Plaintiff to drop the rifle. The Defendants allege the opposite. A factual dispute about the Officers' actions, however, will not preclude an inquiry into the objective reasonableness of the Officers' conduct. The Supreme Court has offered the following guidance with respect to this issue:

Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts. *Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16. *See also Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (Objective reasonableness standard, as measured by established law, should allow resolution of insubstantial claims on summary judgment.) "[The] inquiry [about objective reasonableness] is one of law, not fact, that should be decided at the earliest possible stage of litigation." *Bridgewater v. Caples,* 23 F.3d 1447, 1449 (8th Cir.1994) (*citing Hunter v. Bryant,* 502 U.S. 224, 227–28, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991); *Ripson v. Alles,* 21 F.3d 805, 807–08 (8th Cir.1994)).

To permit this inquiry, however, the Court must assume as true the Plaintiff's allegations concerning the Defendants' conduct and determine whether the Plaintiff has any evidence to support his version of the facts. If the Court views the facts in the light most favorable to the Plaintiff and still determines that the Officers are entitled to qualified immunity, there is no reason to subject the Officers to the burdens of further litigation. Alternatively, if the Court finds that the Plaintiff is unable to produce evidence to support the allegations in his pleadings concerning the Officers' conduct, summary judgment in favor of the Defendants would further the objectives of·qualified immunity as

---

7. The Officers' actions which Plaintiff challenges were clearly discretionary as opposed to ministerial. *See Sellers By and Through Sellers v. Baer,*

28 F.3d 895, 902 (8th Cir.1994) (*citing Davis v. Scherer,* 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 3020 n. 14, 82 L.Ed.2d 139 (1984)).

articulated in *Harlow, Anderson* and *Mitchell.*

### B. Applicability of Doctrine of Qualified Immunity to Count I of Plaintiff's Amended Complaint

In Count I, Plaintiff challenges two aspects of the Officers' conduct: (1) that the search of Plaintiff's residence and the seizure of his property were unreasonable because the search warrant was obtained based upon false information provided by Officer Lewis and the Defendants failed to knock and announce their purpose; and (2) that Plaintiff's arrest was without probable cause. [Am. Compl. ¶¶ 4–5, 10 and 17.]

#### 1. Plaintiff's Claims Relating to Unreasonable Search and Seizure

■ The relevant question with respect to Plaintiff's claims of unreasonable search and seizure "is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the] . . . search [and seizure] to be lawful, in light of clearly established law and the information the searching officer's possessed." *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040. To the extent a reasonable officer could have believed the search was lawful, Officers Barnes, Laws, McCall and Ludwig are entitled to qualified immunity as to Plaintiff's claims of unreasonable search and seizure set forth in Count I.

■ It is undisputed that the search of Plaintiff's premise was conducted pursuant to a search warrant issued by Judge O'Malley. It is axiomatic that when a police officer

acts within the scope of a facially valid warrant, issued by a judge, the officer has "acted in good faith in conducting the search." *U.S. v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). A warrant, however, does not "erect an impenetrable barrier" to a claim of a violation of the Fourth Amendment. *Id. (citing Franks v. Delaware,* 438 U.S. 154, 164–65, 98 S.Ct. 2674, 2680–81, 57 L.Ed.2d 667 (1978) (Presumption of validity of affidavit supporting a search warrant may be overcome by allegations of deliberate falsehood or reckless disregard.))

■ Nonetheless, Plaintiff presents no evidence that Officers Barnes, Laws, McCall or Ludwig had any information that would cause them to doubt the validity of, or to question the probable cause underlying, the search warrant they were executing.[8] Additionally, Plaintiff has offered no evidence that Officers Barnes, Laws, McCall or Ludwig played any role in applying for and/or obtaining the search warrant. Their only role was in the execution of the warrant. Finally, there is no challenge as to the facial validity of the warrant. Plaintiff has not put forth any evidence that the search warrant or the underlying affidavit were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon,* 468 U.S. at 923, 104 S.Ct. at 3421.

Accordingly, the Court finds that reasonable officers in the position of Officers Barnes, Laws, McCall and Ludwig could believe that the search warrant that they exe-

---

8. Plaintiff's Amended Complaint summarily alleges that the Officers were acting upon a search and arrest warrant for a Samuel E. Price, black male, born: 07–10–59. [Am. Compl. at ¶ 11.] Plaintiff further alleges that the Defendants "conspired to build a bogus drug sale in an attempt to cover-up their wrongful conduct," i.e. their mistaken identity. [Am. Compl. at ¶ 15.] The only evidence offered by Plaintiff to substantiate these allegations are hospital identification tags and records which list Plaintiff's name as Samuel Price, age 31, the fact that Plaintiff was not 25–30 years old as originally described in Officer Lewis' Investigation Report, and a report of an interview the day after the warrant was executed which indicates Officer Ludwig was asked whether anyone else was inside the residence except Samuel E. Price. [Pl.'s Ex. 2 (attach. 1),

6, 7 and 8 (attached to Pl.'s Opp.—Barnes' Motion).] However, the search warrant was issued for the premises based upon an alleged previous drug sale at the residence on August 14, 1990, and Plaintiff plead guilty to the charge. Plaintiff has failed to offer any evidence to support his hypothesis of a search and arrest warrant for a Samuel E. Price. Additionally, although Plaintiff contests Officer Lewis' description of the seller on August 14, 1990, he only contests the description as to his age. The Court therefore assumes that the remaining described characteristics match Plaintiff. The Plaintiff has simply failed to present evidence raising a genuine issue of material fact as to his allegations of mistaken identity and summary judgment is appropriate under *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16.

cuted on August 23, 1990, was supported by probable cause. *See Whiteley v. Warden, Wy. State Penitentiary,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (Officers called to aid in execution of arrest warrants "are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.")

In addition to Plaintiff's assertions regarding the search warrant, Plaintiff alleges that the search was unreasonable because the Officers failed to knock and announce their presence and purpose.

The Court recognizes that the parties dispute whether the Officers knocked and announced their presence prior to entering Plaintiff's residence. The Affidavit of Officer Ludwig stated that "the Officers announced that they were the police and that they had a search warrant" prior to entering the residence. [Def.s' Ex. A at ¶ 4.] Plaintiff alleges that he "never heard them announced [sic] they were police officers and that they were at [his] house to execute a search warrant." [Pl.'s Ex. 9 at ¶ 7.] One explanation as to why Plaintiff did not hear the police knock and announce that they had a search warrant is because he was in the back on the house, in the bathtub, with a radio playing when the police arrived at his house. [Def.s' Ex. C at pp. 36–38.] Plaintiff acknowledges that after he heard noises on the side of the house, he heard banging on the front door, and that's when he got out of the bathtub. [Def.s' Ex. C at pp. 37–38.]

 Viewing the evidence in the light most favorable to Plaintiff, i.e. assuming that the Defendants did not knock, the issue then becomes whether the Fourth Amendment's prohibition against "unreasonable searches" requires the police to identify themselves as police and state their purpose.[9] The Court

assumes that Plaintiff's theory is that if the police had announced themselves, Plaintiff would not have felt endangered and Plaintiff would not have grabbed his rifle.

In examining the issue of whether the Fourth Amendment itself contains a knock and announce requirement, the Court must look at the law that was "clearly established" at the time of the incident. *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038–39. Accordingly, for Plaintiff to prevail, the notice requirement must have been clearly rooted in the Fourth Amendment jurisprudence in August 1990.

The Eighth Circuit has not directly decided the issue of whether a search that does not comply with the "knock and announce" doctrine violates the Fourth Amendment. In *Moore,* 956 F.2d 843, the Court affirmed the denial of a motion to suppress evidence obtained pursuant to a no knock search warrant issued in Nebraska. The Court noted that no Supreme Court or Eighth Circuit precedent should have warned the officer that his affidavit as to probable cause to enter without knocking was inadequate under the Fourth Amendment's reasonableness standard. *Id.* at 850–51. Three years after the *Moore* decision, in *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court held that the reasonableness of the search of a dwelling depended in part on whether the officials announced their presence and authority prior to entering, thereby incorporating the common law "knock and announce" rule into the Fourth Amendment. *Id.* at 936–37, 115 S.Ct. at 1919. However, applying the established law in existence, the notice requirement was not clearly established in this Circuit as a constitutional requirement until the Supreme Court decided *Wilson,* four years after the search and seizure at issue in this case. *See St. Hilaire v. City of Laconia,* 71 F.3d 20,

---

9. The Court notes that Plaintiff has not alleged a violation of either 18 U.S.C. § 3109 or Mo.Rev. Stat. § 544.200, which both permit officers to break open doors to execute a search warrant after notice of authority and purpose. Even if Plaintiff had raised such claims, they would not be persuasive in this case. The Eighth Circuit has held that § 3109, the federal knock and announce rule, does not apply to state officials

acting totally without federal involvement, as in this case. *United States v. Moore,* 956 F.2d 843, 847–48 (8th Cir.1992). With respect to the Missouri knock and announce rule, an alleged violation of a state statute cannot give rise to a cause of action under § 1983. *Ervin v. Blackwell,* 585 F.Supp. 680, 683 (W.D.Mo.1983) *aff'd,* 733 F.2d 1282 (1984).

27–28 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996) (Holding that it was not until *Wilson* that the notice requirement was clearly established as a constitutional requirement under the Fourth Amendment.)

■ Under *Harlow* and *Anderson,* a § 1983 Plaintiff must establish that the constitutional right at issue was clearly established at the time it was allegedly violated in order to avoid the application of the doctrine of qualified immunity. Because Plaintiff has failed to meet his burden with respect to the notice issue, Defendants are entitled to qualified immunity on this theory set forth under Count I of Plaintiff's Complaint.

### 2. Plaintiff's Claim of Unlawful Arrest

■ Turning to Plaintiff's allegations that the Officers lacked probable cause to arrest him, it is fundamental that an arrest violates the Fourth Amendment when there exists no reasonable suspicion or probable cause that a person is engaged in criminal activity. *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979). Probable cause existed if "at the moment the arrest was made ... the facts and circumstances within [the officers' knowledge] and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that" Plaintiff had committed or was committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964) (citation omitted). *See also Bridgewater,* 23 F.3d at 1449.

■ As previously stated, when an individual pleads guilty to a charge, he not only admits his guilt, but also admits all of the facts charged. *Hurse v. State,* 527 S.W.2d 34, 36 (Mo.App.1975) (*citing Robinson v. State,* 491 S.W.2d 314, 315 (Mo.1973)).[10] Furthermore, the Eighth Circuit has held

that a conviction, pursuant to a guilty plea, acts as a complete defense to a civil rights action asserting that an arrest was made without probable cause. *Williams v. Schario,* 93 F.3d 527, 528–29 (8th Cir.1996) (*citing Malady v. Crunk,* 902 F.2d 10, 11 (8th Cir. 1990)). *See also Cameron v. Fogarty,* 806 F.2d 380, 388–89 (2nd Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). As the court explained in *Cameron:*

> In sum, we conclude that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires that § 1983 doctrine be deemed, in the absence of any indication that Congress intended otherwise, to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.

806 F.2d at 388–89.

■ As previously stated, on March 11, 1991, Plaintiff plead guilty to the crimes of Sale of Controlled Substance on August 14, 1990, and Exhibiting a Weapon in a Rude, Angry and Threatening Manner on August 23, 1990. [Def.s' Ex. D—Tr. at pp. 18–19.] Application of the common-law principle precludes Plaintiff from maintaining his claim under § 1983 based upon a lack of probable cause for his arrest. Accordingly, Officers Barnes, Laws, McCall and Ludwig are entitled to summary judgment as to Count I of Plaintiff's Amended Complaint.

### C. Applicability of Qualified Immunity to Count II—Excessive Force

■ Turning to Count II of Plaintiff's Amended Complaint, Plaintiff alleges that Officers Barnes, Colley, Laws, McCall and

---

10. The fact that Plaintiff's guilty plea was an *Alford* plea, *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), does not alter his admission of guilt and the underlying facts charged. In *Alford,* the Supreme Court held that an accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he/she is unwilling to admit participation in a crime. *Id.* at 37, 91 S.Ct. at 167. Missouri courts have held that

an *Alford* plea "stands on equal footing with one in which an accused specifically admits the commission of the particular act charged." *Wilson v. State,* 813 S.W.2d 833, 843 (Mo. banc 1991) (*quoting Jenkins v. State,* 788 S.W.2d 536, 538 (Mo.App.1990)). (In both *Wilson* and *Jenkins,* the plaintiffs were seeking post-conviction relief; one based upon the alleged involuntariness of his plea and the other based upon ineffective assistance of counsel.)

Ludwig used excessive force in arresting him in violation of his rights under the Fourth, Eighth and Fourteenth Amendments. [Am. Compl. at ¶¶ 19–20.][11] Excessive force claims relating to an arrest or other seizure are analyzed under the Fourth Amendment's reasonableness standard.[12] *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them ..." *Id.* at 397, 109 S.Ct. at 1872. The Court does not engage in an examination of the facts with "20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872.

Whether the Officers' actions were reasonable will turn upon the particular circumstances of the case. However, where deadly force is utilized, the inquiry focuses upon whether "the officer using the force ha[d] probable cause to believe that the suspect pose[d] a significant threat of death or serious physical injury to the officer or others.'" *Schulz v. Long,* 44 F.3d 643, 649 (8th Cir.1995) (*quoting Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985)). "Where the officer ha[d] probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner,* 471 U.S. at 11, 105 S.Ct. at 1701. The Court notes:

the calculus of reasonableness [under the Fourth Amendment] must embody allowance for the fact that police officers are often forced to make split-second judg-

ments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1872.

In *St. Hilaire v. City of Laconia,* 885 F.Supp. 349 (D.N.H.), *aff'd,* 71 F.3d 20 (1st Cir.1995), the First Circuit was faced with a scenario substantially similar to this case. In *St. Hilaire,* the district court granted summary judgment on an excessive force claim brought under § 1983 where the police shot a man in his car, who was reaching for a gun. As in this case, the officers were attempting to execute a search warrant and the parties disputed whether the officers identified themselves as they approached the car with their guns drawn. *Id.* at 352–53. The Court held that the Plaintiff's allegations of self-defense did not create a genuine issue of material fact as to whether the officers reasonably believed they had to use deadly force to defend themselves. *Id.* at 357.

Additionally, the Eighth Circuit has recently reversed the denial of summary judgment on excessive force claims involving gun fire where there was an imminent threat of serious harm involved. *See Cole v. Bone,* 993 F.2d 1328, 1333 (8th Cir.1993) (Officer's decision to use deadly force was held not objectively unreasonable where officer had probable cause to believe that the truck involved in a high speed chase posed an imminent threat of serious physical harm, and officer had probable cause to believe that the driver had committed a crime.); *Krueger v. Fuhr,* 991 F.2d 435, 439–40 (8th Cir.), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335

---

11. The Eighth Amendment "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions." *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). Plaintiff's allegations of excessive force relate solely to the force used during the search and his arrest, not thereafter. Accordingly, the Eighth Amendment is inapplicable. *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977) (Eighth Amendment standard "is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") Additionally, the Eighth Amendment standard is less protective than the Fourth Amendment standard. *Graham*

*v. Connor,* 490 U.S. 386, 398, 109 S.Ct. 1865, 1873, 104 L.Ed.2d 443 (1989). Accordingly, because the Court finds Defendants did not violate the Fourth Amendment with respect to Plaintiff's arrest, the Officers could not have violated the Eighth Amendment.

12. In *Graham,* the Supreme Court declined to apply the Fourteenth Amendment's "substantive due process" standard to an excessive force claim, and held that the more appropriate standard was that set forth in the Fourth Amendment relating to "physically intrusive governmental conduct." 490 U.S. at 395, 109 S.Ct. at 1871.

(1993) (Officer's decision to use deadly force was held not objectively unreasonable where officer had probable cause to believe suspect he was chasing had committed a crime and that suspect likely possessed a knife.)

█ Applying the above case law to the facts of this case, and viewing the evidence in the light most favorable to Plaintiff, the Court examines the relevant factors. Plaintiff admits he grabbed his rifle to protect himself "from the invaders and to scare them away." [Pl.'s Ex. 9 at ¶ 6.] Officer Barnes alleges he saw the rifle in Plaintiff's hands, pointing at him and another Officer. [Def.s' Ex. B at ¶ 3.]. Under Missouri law, through his guilty plea, Plaintiff admitted that he exhibited the rifle in an angry and threatening manner. *See Williams,* 93 F.3d at 528; R.S. Mo. § 571.030. The Court finds that the Officers' split-second decision to use deadly force under these circumstances was not objectively unreasonable. The Officers had probable cause to believe that the Plaintiff had committed a crime involving the sale of drugs, and further was committing a serious crime of unlawful use of a weapon. Additionally, the Officers had probable cause to believe that Plaintiff posed an imminent threat of serious physical harm to the Officers. In light of all of the information that was available to the Officers at the time of the shooting, the Court finds that the Officers' use of deadly force was constitutionally reasonable under *Tennessee v. Garner.*

## IV. The Doctrine of Collateral Estoppel

█ Officers Barnes, Laws, McCall and Ludwig argue that in addition to the application of the doctrine of qualified immunity, they are also entitled to summary judgment as to Counts I and II based upon the doctrine of collateral estoppel. Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

The Supreme Court has held that the doctrine of collateral estoppel applies to § 1983 actions against police officers premised upon violations of the Fourth Amendment. *Id.* at 103–05, 101 S.Ct. at 419–21. The doctrine effectuates judicial economy by precluding parties from contesting matters that they have had a full and fair opportunity to litigate. *Id.* at 94–95, 101 S.Ct. at 414–15. The doctrine applies only where a party had "an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding." *Simmons v. O'Brien,* 77 F.3d 1093, 1095 (8th Cir.1996).

> Only when a party has previously had such a full and fair opportunity to litigate that issue does the benefit of preclusion outweigh the countervailing due process concerns present whenever a party is estopped from raising a claim.

*Id.* at 1095–96 (*citing Blonder–Tongue Lab. Inc. v. University of Ill. Found.,* 402 U.S. 313, 328–30, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971)).

The Defendants assert that Plaintiff's entry of a guilty plea in the state court proceedings to the charges of Sale of a Controlled Substance and Unlawful Use of a Weapon precludes his § 1983 claims against the Officers. The Defendants argue that the guilty pleas encompass any challenge Plaintiff may have had as to the unreasonableness of the search and seizure because Plaintiff had a full and fair opportunity to raise such claims during the plea proceedings. [Def.s' Sugg. at pp. 14–15.]

█ The full faith and credit clause generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen,* 449 U.S. at 96, 101 S.Ct. at 415.[13] However, a state court judgment will not be given collateral estoppel effect "where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Id.* at 101, 101 S.Ct. at 418.

---

**13.** The full faith and credit clause provides that "judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state ..." 28 U.S.C. § 1738.

In the context of a § 1983 action, when a federal constitutional claim is decided in a state criminal proceeding, following a full and fair hearing, collateral estoppel will bar a subsequent § 1983 action raising the same issue. *Id.* at 103–04, 101 S.Ct. at 419–20.

██ The issue before the Court then is whether the collateral estoppel doctrine, as applied by the Missouri courts, would prevent Plaintiff from challenging the legality of the search and seizure based upon his guilty plea. In Missouri, collateral estoppel applies when:

(1) [T]he issue in the present case [is] identical to the issue decided in the prior adjudication;

(2) [T]he prior adjudication result[ed] in judgment on the merits;

(3) [T]he party against whom collateral estoppel is asserted is the same party (or in privity with a party) in the prior adjudication; and

(4) [T]he party against whom collateral estoppel is asserted ha[d] a full and fair opportunity to litigate the issue in the prior suit.

*State ex rel. Haley v. Groose,* 873 S.W.2d 221, 223 (Mo. banc 1994) (*citing King Gen. Contractors v. Reorganized Church,* 821 S.W.2d 495, 500 (Mo. banc 1991); *Oates v. Safeco Ins. Co. of Am.,* 583 S.W.2d 713, 719–21 (Mo. banc 1979)).

Under the above case law, the Eighth Circuit has upheld the application of collateral estoppel to bar § 1983 claims where the defendant had fully litigated his claim of a constitutional violation in the state trial court. *See Simmons,* 77 F.3d at 1097 (Where defendant raised issue of coercion at the suppression hearing in state court, the defendant was estopped from relitigating the issue in federal court under § 1983.); *Baker v. McCoy,* 739 F.2d 381, 384 (8th Cir.1984) (same); *Sanders v. Frisby,* 736 F.2d 1230, 1232 (8th Cir.1984) (Where defendant raised Fourth Amendment issues by means of a

motion to suppress, which was denied by the trial court, collateral estoppel would act as a bar to defendant relitigating those claims through a § 1983 action.); *Tyler v. Harper,* 744 F.2d 653, 655–56 (8th Cir.1984), *cert. denied,* 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985) (Section 1983 claim held to be barred under Missouri law where plaintiff had been given a full and fair opportunity to litigate his claim of witness intimidation during a two day hearing in state court on his motion to dismiss.)

██ Under the circumstances of this case, however, it is clear that Missouri courts would not invoke the doctrine of collateral estoppel. First, the issue in the present case, e.g. the constitutionality of the search and seizure, was neither raised nor litigated in the state court proceedings. As a matter of fact, no issue was "actually litigated" in the state plea proceedings because the Plaintiff declined to contest his guilt. [Tr. at pp. 19–20.] Second, there is no indication that the Plaintiff either had a full and fair opportunity to litigate the issue in the state court proceeding or that Plaintiff made any concession with respect to his constitutional claims.[14]

Based upon the above case law, the Court rejects Plaintiff's assertion that the collateral estoppel doctrine applies in this case. The Court's decision is in accord with the Supreme Court's decision in *Haring,* 462 U.S. at 316, 103 S.Ct. at 2374–75. In *Haring,* the Court held that under Virginia law, a guilty plea entered in a state criminal action would not act as a bar to a subsequent § 1983 claim. The Court's decision was based upon the fact that the Fourth Amendment issues raised in the § 1983 case were not actually litigated or decided, nor were they necessary to support the judgment entered on the guilty plea in the prior criminal proceeding. *Id.* at 316, 103 S.Ct. at 2374–75. The Supreme Court specifically stated that the issue of the defendant's guilt was "simply irrelevant to the legality of the search under the

---

**14.** The Defendants' argument that Plaintiff waived any claim of a constitutional violation by pleading guilty is without merit. As stated by the Supreme Court, "[a] defendant's rights under the Fourth Amendment are not among the trial

rights that he necessarily waives when he knowingly and voluntarily pleads guilty." *Haring v. Prosise,* 462 U.S. 306, 320–21, 103 S.Ct. 2368, 2377, 76 L.Ed.2d 595 (1983).

Fourth Amendment or to [his] right to compensation from state officials under § 1983." *Id.* "[A] defendant's decision to plead guilty may have any number of other motivations." *Id.* at 318, 103 S.Ct. at 2376. Based upon *Haring,* the Eighth Circuit has held that the doctrine of collateral estoppel would not bar a plaintiff from maintaining a *Bivens* action after entering his pleas of guilty or nolo contendere. *Vennes v. An Unknown Number of Unidentified Agents of the United States,* 26 F.3d 1448, 1452 (8th Cir.1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). *See also Linnen v. Armainis,* 991 F.2d 1102, 1106 (3rd Cir.1993) (A defendant's guilty plea does not bar his § 1983 claim "because it does not involve any issue that would be preclusive under the full faith and credit clause of the Constitution.")

Accordingly, the Court rejects Defendants' collateral estoppel argument.

## V. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendants Barnes', Laws', McCall's and Ludwig's Motion for Summary Judgment [Doc. # 40] is GRANTED. Defendants Barnes, Laws, McCall and Ludwig are granted summary judgment as to Counts I and II of Plaintiff's Amended Complaint.