991 F.Supp. 1113 (1998)
Duane L. IVESTER, Plaintiff,
v.
Jessie Calvin LEE, et al., Defendants.
No. 4:96-CV-1807 CAS.
United States District Court, E.D. Missouri, Eastern Division.
January 26, 1998.
*1114 *1115 Duane L. Ivester, Moberly, MO, pro se.
Daniel P. Fall, Schnapp and Fulton, Fredericktown, MO, for Jessie Calvin Lee, Ironton City Police Dept., Joseph Wilson, John Rueweler, Victor Wilfong, Johnny Matthewa, Charles Helton and Iron County Sheriff's Dept.
Raymond M. Meyer, Asst. U.S. Atty., St. Louis, MO, for U.S. and Drug Enforcement Agency.

*1116 MEMORANDUM AND ORDER

SHAW, District Judge.
This matter is before the Court on a number of pretrial motions, including competing motions for summary judgment filed by the plaintiff and the defendants. Plaintiff, a Missouri prisoner, seeks the return of $3,543.01 in U.S. currency which was seized by officers of the Ironton Police Department on March 27, 1993. Plaintiff also asserts that his constitutional rights were violated in connection with a search of his residence, his arrest, seizure of the currency, and the transfer of the currency to the federal Drug Enforcement Administration.

I. Standard of Review.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for him. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324.
In passing on a motion for summary judgment, this Court is required to view the facts in a light most favorable to the nonmoving party and to give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).
Nonetheless, the Court is "`not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996) (quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir.1990)). Further, "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir.1993).
With these standards in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

II. Facts.[1]
On March 27, 1993, plaintiffs residence at Rural Route # 1, Box 20B, Arcadia, Missouri was searched by defendant Jesse Calvin Lee, a deputy sheriff with the Iron County Sheriff's Department; defendant Joseph Wilson, *1117 Chief of Police of the Ironton Police Department; and defendants Victor Wilfong, Johnny Matthews, John Rueweler, and Charles Helton of the Ironton Police Department. These defendants conducted the search under authority of a search warrant issued on March 27, 1993 by Judge Alan G. Harriss, Associate Circuit Judge of Iron County, Missouri. (See Ex. B to Defs.' Mem. in Supp. of Mot. for S.J.)
The search warrant was issued pursuant to a complaint for search warrant submitted by an Iron County Assistant Prosecuting Attorney. (Id.) The basis for obtaining the warrant was set forth in the affidavit of defendant Lee, which was attached to and incorporated in the complaint for search warrant. In the affidavit, defendant Lee stated that he believed marijuana, controlled substances, and illegal contraband were being kept in a house and storage building located at Route 1, Box 20B, Arcadia, Missouri, which was owned by a realty company and occupied by plaintiff Duane Ivester. (Id.) In support of this belief, Lee's affidavit stated the information had come from a confidential informant who (i) had been inside the house within the past forty-eight hours and had observed a controlled substance therein; (ii) had observed plaintiff in actual possession of the controlled substance; (iii) described seeing marijuana packaged in plastic bags and located in various parts of the house; (iv) was familiar with the appearance of marijuana; and (v) had provided information to Lee in the past which was corroborated and was deemed by Lee to be reliable. (Id.) None of the other individual defendants supplied any information used to procure the search warrant. (Defs.' Mem. in Supp., Matthews Aff. Ex. D ¶ 7; Rueweler Aff. Ex. E ¶ 7; Wilson Aff. Ex. F ¶ 9; Helton Aff. Ex. G ¶ 6; Wilfong Aff. Ex. H ¶ 9.)
Based on the complaint for search warrant and Lee's affidavit, Judge Harriss issued a search warrant authorizing the search of plaintiff's residence and vehicles, and seizure of "Marijuana and other controlled substances and/or illegal contraband and cultivating tools." (Id.)
The warrant was executed on March 27, 1993. Officer Lee knocked on the main entrance door, identified himself as an Iron County Deputy Sheriff, and stated that he was serving a duly authorized search warrant. (Ex. A to Defs.' Mem. in Supp., Lee Aff. ¶ 18.) Plaintiff accepted the search warrant and consented to the officers' entry into the house. (Id. ¶ 19.) Defendant Rueweler took plaintiff and the other occupants into the living room of the house. (Id.; Rueweler Aff. ¶ 6.) Rueweler seized a gun case from the living room mantle, and found it to contain a loaded .380 semiautomatic pistol, a large freezer bag containing several other plastic freezer bags and plastic sandwich bags, a floating weight scale, a package of six syringes, and $2,795.00 in U.S. currency. (Lee Aff. ¶ 21; Rueweler Aff. ¶ 6.)
Defendant Matthews searched the upstairs bedroom and discovered a man standing in a bathtub behind a shower curtain. (Ex. D. to Defs.' Mem. in Supp.; Matthews Aff. ¶ 5.) This man had previously been seen running into the house as the defendant officers approached. (Ex. A, D, E, F, H to Defs.' Mem. in Supp.) The man had a plastic freezer bag lying between his feet and a similar bag protruding from the top of his blue jeans, both of which contained a green, leafy substance. (Matthews Aff. ¶ 5.)
A search of a bedroom revealed a small plastic cup containing a material believed to be partially burned marijuana cigarettes, a shotgun, a six-shot revolver, triple-beam balance scales, a plastic cup containing $125.28, and a glass jar containing seeds believed to be marijuana seeds. A green duffle bag in the bedroom contained a silver-colored serving tray, a pair of scissors, a pair of hemostats, a container of rolling papers, a plastic baggie containing a green, leafy substance believed to be marijuana, and a wallet containing $615.00 in currency. (Lee Aff. ¶¶ 19-20.) Another bedroom contained "several other firearms." (Id. ¶ 21.)
Plaintiff and the other individuals present in the house were advised of their Miranda[2] rights, handcuffed and taken to the defendants' patrol cars. As the individuals were being taken to the cars, a juvenile suspect *1118 began speaking to defendant Lee, whereupon plaintiff stated, "Shut up, don't say anything, it's all mine." (Id. ¶¶ 22-23.)
On March 27, 1993, an Iron County assistant prosecuting attorney filed a complaint charging plaintiff with the Class C felony of possessing a controlled substance at his residence. (Pl.'s Opposition filed 7/31/97 at 3, ¶¶ 9-10.) Plaintiff was held in the Iron County Jail in Ironton, Missouri from March 27, 1993, through approximately April 3 or 4, 1993. (Pl's. Answers to Interrog. Nos. 8a and 8b.)[3] The record does not reflect disposition of the charge against plaintiff.
On April 1, 1993, the Drug Enforcement Administration (DEA) adopted the seizure of the currency for federal administrative forfeiture proceedings. (Defs.' Mem. in Supp., Snider Decl., Ex. C at 2.) On April 25, 1993, written notice of the seizure was sent pursuant to 19 U.S.C. § 1607(a) and 21 U.S.C. § 881(d), by certified mail, return receipt requested, to Duane L. Ivester, RR# 1, Box 20B, Arcadia, Missouri 63621. (Id.) This letter was returned unclaimed to the DEA with the envelope stamped "Returned to Sender. Attempted [illegible]." (Id.)
During the time period March 1, 1993 though July 1, 1993, plaintiff resided at Route 1, Box 20B, Arcadia, Missouri, and at HCR63 Box 3230, Ironton, Missouri. (Pl's. Answers to Interrog. No. 7a.)
Written notice of the seizure was sent on April 25, 1993, pursuant to 19 U.S.C. § 1607(a) and 21 U.S.C. § 881(d), by certified mail, return receipt requested, to Christy L. Whited, HCR 69 Box 1085, Ironton, Missouri 63650. (Snider Decl. at 3.) On May 3, 1993, an individual signing as the addressee accepted delivery of the written notice of seizure. (Id.) Written notice of the seizure was also sent on April 25, 1993, pursuant to 19 U.S.C. § 1607(a) and 21 U.S.C. § 881(d), by certified mail, return receipt requested, to Shawn R. Ivester, Sheila J. Moyers, and Duane Moyers, at P.O. Box 42, Arcadia, Missouri 63621. (Id.) On May 3, 1993, an individual signing as the agents of these three addressees accepted delivery of the written notices of seizure. (Id.)
Beginning on May 5, 1993, the DEA published notice of the seizure in USA Today, a newspaper of general circulation, for three consecutive weeks as required by statute. (Id. at 4.) These notices instructed the plaintiff to file a claim of ownership within twenty (20) days of the "first date of publication of the notice of seizure" if he wished to contest the seizure of currency in federal district court. (Id.) Plaintiff failed to file a claim within the required time period, and on June 11, 1993, the DEA forfeited the currency pursuant to 19 U.S.C. § 1609, 21 U.S.C. §§ 881(a)(2) and (d), and 21 C.F.R. § 1316.77. (Id.)

III. Discussion.

As a threshold matter, the Eighth Circuit has not squarely addressed the question whether the forfeiture remedies in the Tariff Act of 1930, 19 U.S.C. §§ 1607-09, preclude actions under Bivens[4] or 42 U.S.C. § 1983. The Court concludes, however, that such claims would probably be permitted. See Glasgow v. United States Drug Enforcement Admin., 12 F.3d 795, 799 & n. 6 (8th Cir.1993); Martinez-Lorenzo v. Wellington, 911 F.Supp. 383, 388 (W.D.Mo.1995). Plaintiff cannot, however, assert Fourth Amendment challenges to the forfeiture itself, or seek the return of the forfeited currency, because he did not contest the alleged deficiencies in the administrative forfeiture proceeding. See Muhammed v. Drug Enforcement Agency, Asset Forfeiture Unit, 92 F.3d 648, 651 & n. 3 (8th Cir.1996); United States v. Woodall, 12 F.3d 791, 795 (8th Cir.1993). Accordingly, the Court will address the merits of plaintiff's remaining claims, construed as being brought pursuant to Bivens and 42 U.S.C. § 1983.

*1119 A. Federal Defendants' Motion for Summary Judgment.
In Count VIII of the Amended Complaint, plaintiff alleges that defendants United States of America and DEA (collectively referred to as "DEA") improperly received and forfeited the seized currency in violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, 18 U.S.C. §§ 241-242, and 42 U.S.C. §§ 1983 and 1985. Plaintiff seeks a judgment against these defendants in replevin for the sum of $3,543.01, together with interest thereon, and for monetary damages.
The DEA moves for summary judgment, asserting that regardless of the constitutionality of the search of plaintiff's residence, the transfer, adoption and forfeiture of the seized property by the DEA were proper and did not violate plaintiff's due process rights.[5]
Plaintiff moves for summary judgment with respect to the forfeiture issues, and responds that the currency was wrongfully seized by the state defendants in violation of Missouri law, creating a jurisdictional defect which precludes any forfeiture of plaintiff's property or its transfer to the DEA. Plaintiff also asserts that the DEA (i) did not comply with a Missouri statute which requires state law enforcement agencies to obtain the approval of a state court prior to transferring seized property to a federal agency; (ii) failed to give him notice prior to accepting transfer of the seized currency; and (iii) violated his due process rights when it forfeited the currency without adequate notice.
Section 881(a) of Title 21 of the United States Code "provides for the civil forfeiture of property that has been used either to facilitate illegal drug transactions or to acquire the proceeds of such criminal activity." Madewell v. Downs, 68 F.3d 1030, 1037 (8th Cir.1995). The statute provides in pertinent part:
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
* * *
(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title....
21 U.S.C. § 881(a)(6).
"A federal agency may adopt the seizure of property seized by another agency as related to illegal drug use or trafficking." Madewell, 68 F.3d at 1037. The Eighth Circuit has held that the United States may adopt a seizure even when the person who originally seized the property had no authority to do so, or the initial seizure was constitutionally tainted. Id. at 1038 (citing United States v. One Ford Coupe Auto., 272 U.S. 321, 325, 47 S.Ct. 154, 71 L.Ed. 279 (1926)). The Eighth Circuit's Madewell decision thus forecloses plaintiff's argument that a jurisdictional defect arising from the initial seizure of the currency without a warrant precludes any forfeiture of his property by the DEA.
The Eighth Circuit has also held that any constitutional infirmity in the transfer of seized property, or lack of authority to transfer the property, does not taint the adoption of the seizure by a federal agency. Madewell, 68 F.3d at 1038 (citing United States v. Winston-Salem/Forsyth County Bd. of Educ., 902 F.2d 267, 272 (4th Cir. 1990)). Consequently, plaintiff's contention that the DEA's adoption of the forfeiture was improper because Missouri statutory notice *1120 requirements set forth in RSMo. § 513.607.5(2) were not met is meritless. In addition, the Missouri statute is inapplicable to a federal administrative forfeiture proceeding, which is controlled by the procedures set forth in 19 U.S.C. §§ 1607-09 and 21 C.F.R. §§ 1316.75-77.
Further, it is well established that no preseizure notice or hearing is required before a federal agency may seize personal property subject to forfeiture for violation of federal drug laws. Madewell, 68 F.3d at 1038 (citations omitted). As a corollary, due process does not require any preseizure notice of a federal adoption of a seizure made by local authorities. Id. at 1039. Therefore, plaintiff's contention that his due process rights were violated by a lack of pre-adoption notice by the DEA is unavailing.
Finally, the DEA provided plaintiff with adequate notice of its intent to administratively forfeit the currency. Forfeitures under 21 U.S.C. § 881 are governed by the procedures found in the Tariff Act of 1930, 19 U.S.C. §§ 1607-09, and 21 C.F.R. §§ 1316.75-77, which permits "administrative forfeitures" of property valued at $500,000.00 or less. Madewell, 68 F.3d at 1037. The DEA must publish notice of its intent to forfeit in a newspaper of general circulation once a week for at least three successive weeks,[6] and must send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a). After giving this notice, the DEA may declare the property forfeited if no interested party opposes the forfeiture by filing a claim within the statutorily defined time limits.
Due process in a federal administrative forfeiture requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." United States v. Woodall, 12 F.3d 791, 794 (8th Cir.1993) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "Whether notice was adequate is measured at the time notice was sent." Id. (citing Sarit v. United States Drug Enforcement Admin., 987 F.2d 10, 14 (1st Cir.), cert. denied, 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993)). When the DEA knows the interested party's whereabouts at the time the notice is sent, failure to send the notice to that address cannot be considered as complying with minimum due process standards. Id.; Robinson v. Hanrahan, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (due process violated when forfeiture notice mailed to home of defendant who was in jail throughout proceeding).
In this case, it is uncontroverted that plaintiff was not in state or federal custody when the notice was sent, and he was not being prosecuted for federal offenses. Compare Madewell, 68 F.3d at 1047. The address to which the notice was sent was correct, as it was one of two addresses where plaintiff later stated that he resided at the time in question.
Under these circumstances, the DEA met the requirements of due process by mailing the notice to plaintiff's Route 1, Box 20B address in Arcadia, Missouri, and later publishing the notice in USA Today when the mailed notice was returned. It is not a due process violation for the DEA to make no further attempt to personally notify the owner of property to be forfeited after mailed notice is returned, if it did not know or have reason to know that the address to which it sent notice would be ineffective. See Madewell, 68 F.3d at 1046-47. Plaintiff has presented no evidence that the DEA knew or had reason to know that mail sent to him at Route 1 Box 20B, Arcadia, Missouri would be ineffective.
Plaintiff relies on United States v. James Daniel Good Real Property, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) to support his contentions. In that case, the Supreme Court held that absent exigent circumstances, due process requires pre-seizure notice and an opportunity to be heard where *1121 forfeiture of real property is sought. The holding of James Daniel Good does not, however, apply to the forfeiture of personal property, which is at issue here. United States v. One Parcel of Real Property Described as Lot 41, Berryhill Farm Estates, 128 F.3d 1386, 1392 (10th Cir.1997); Madewell, 68 F.3d at 1038-39 & n. 8. Further, as previously noted, plaintiff's argument that the DEA failed to comply with the notice requirements of RSMo. § 513.607.5(2) prior to forfeiting the currency is without merit, because the statute does not control a federal administrative forfeiture proceeding.
For the foregoing reasons, plaintiff has failed to establish that genuine issues of material fact exist concerning whether his due process rights were violated when the DEA accepted transfer of the seized currency and then forfeited it. The DEA's motion for summary judgment should therefore be granted on all claims raised in Count VIII, and plaintiff's motion for summary judgment against the DEA should be denied.

B. State Defendants' Motion for Summary Judgment.
The remaining defendants are individual defendants Wilson, Matthews, Rueweler, Wilfong, Lee and Helton, sued individually and in their official capacities (sometimes referred to as the "Individual Defendants"), the Iron County Sheriff's Department and the Ironton Police Department. All of these defendants are collectively referred to as the "State Defendants."
To the extent the Individual Defendants have been sued in their official capacities, they are not "persons" for purposes of § 1983. A claim against a public official in his or her official capacity is merely another way of pleading an action directly against the public entity itself. Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, suits against public officials in their official capacity should be treated as suits against the public entity. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, all of plaintiff's § 1983 claims against the Individual Defendants in their official capacities are barred and will be dismissed.
The Court now turns to the motion for summary judgment filed by the State Defendants.

1. Transfer of Currency to DEA.
Plaintiff contends in Count V of the Amended Complaint that the Individual Defendants violated his due process rights by transferring the seized currency to the DEA without prior written notice, and without first obtaining a turnover order from a state court as required by RSMo. § 513.647 (1994), before the seized property was transferred to federal authorities. Plaintiff asserts violations of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.
There is no requirement of preseizure notice under Missouri law. As previously discussed above with respect to the DEA's motion for summary judgment, there is also no requirement of preseizure notice under federal law. Madewell, 68 F.3d at 1038. Plaintiff is correct that RSMo. § 513.647 requires a turnover order from a state court before transfer of seized property to federal control, see, e.g., State v. Sledd, 949 S.W.2d 643 (Mo.App. W.D.1997). This section did not take effect, however, until after plaintiff's property was transferred and forfeited, and therefore does not apply to the instant case.[7] No other Missouri authority establishes a due process requirement of a "turnover" order before property may be transferred from state to federal authorities. Madewell, 68 F.3d at 1043-44.
Therefore, because the currency at issue was transferred to the DEA and forfeited prior to the effective date of § 513.647, plaintiff cannot establish a due process violation based on the transfer. The Individual Defendants *1122 are therefore entitled to judgment on all of plaintiff's allegations in Count V.
In addition, because the Court has concluded that the DEA properly adopted and forfeited the seized currency, the State Defendants are entitled to judgment on plaintiff's claims challenging the forfeiture in Count VIII, to the extent those claims are directed against the State Defendants. See Madewell, 68 F.3d at 1050. As a result, the State Defendants' motion to dismiss and in the alternative to strike addressed to plaintiff's forfeiture claims will be denied as moot.

2. Fourth Amendment Issues.
In several counts, plaintiff asserts claims based on the alleged improper search of his residence. In Count I, plaintiff contends the Individual Defendants searched his residence at Route 1, Box 20B, Arcadia, Missouri pursuant to an invalid search warrant which was obtained without a showing of probable cause or an articulated requisite suspicion based upon personal knowledge of the affiant, and was insufficiently particularized. In Counts II and III, plaintiff contends that defendant Wilson improperly sought defendant Lee's participation and assistance in preparing a false affidavit in support of the search warrant, as defendant Lee had not personally participated in any investigation of plaintiff or had any personal contact with the confidential informant, and the remaining Individual Defendants knew or should have known that the search warrant was invalid. In Count VI, plaintiff appears to allege that the State Defendants acted together improperly to induce the Iron County court to issue a baseless search warrant for plaintiff's residence, pursuant to a de facto custom, policy and practice of defendants Ironton Police Department and Wilson. Finally, in Count VII, plaintiff alleges that between March 27, 1993 and April 5, 1993, defendants Iron County Sheriff's Department and Ironton Police Department (i) had a de facto practice and policy under which they approved and authorized their officials' submission of false and perjured documents to courts in order to obtain search warrants; and (ii) actually approved the conduct of defendant Lee in submitting a false affidavit in support of the search warrant for plaintiff's residence.
The State Defendants move for summary judgment on plaintiff's search-related claims, asserting that (i) the complaint and affidavit presented to Judge Harriss set forth sufficient facts to establish probable cause; (ii) the affidavit in support of the search warrant was and remains true to the best of the affiant's knowledge, information and belief; (iii) the Individual Defendants are therefore entitled to official immunity for their actions in conducting the search and seizure; (iv) defendants Wilson, Rueweler, Wilfong, Matthews and Helton are also entitled to official immunity because they acted pursuant to a warrant secured by a fellow officer; and (v) the governmental entity defendants are not liable under 42 U.S.C. § 1983 on a respondent superior theory, and plaintiff has failed to alleged or present any evidence of unconstitutional policy or custom by these defendants.

a. Illegal Search and Seizure Claims.

The Court will first address plaintiff's claims that the Individual Defendants violated his Fourth Amendment rights by knowingly presenting false evidence to support the probable cause determination for issuance of the search warrant, and conducting an improper search under the invalid warrant. The Individual Defendants move for summary judgment based on the truth of the matters contained within defendant Lee's affidavit supporting issuance of the search warrant, and on the basis of qualified immunity.
The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil claims insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. George v. City of St. Louis, 26 F.3d 55, 57 (8th Cir.1994) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "In the context of a police officer obtaining a warrant, immunity will be lost only where the warrant application is so lacking in indicia of probable cause as to *1123 render official belief in its existence unreasonable." Id. (citations omitted).
A presumption of validity exists with respect to the affidavit supporting a search warrant. Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The factual information providing probable cause for issuance of a search warrant must be truthful in the sense that the information is "believed or appropriately accepted" as true by the person submitting the information. Franks, 438 U.S. at 165. "A warrant which is based upon an affidavit containing deliberate falsehood or reckless disregard for the truth violates the Fourth Amendment." Id. (internal citations and punctuation omitted); Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir.1996).
Bare allegations of misrepresentation are not sufficient to undermine the presumption of validity accorded an affidavit supporting a warrant request. Myers v. Morris, 810 F.2d 1437, 1457 (8th Cir.), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). An attack on a warrant must be more than conclusory and must be supported by proof. Id. at 1457-58 (citing Franks, 438 U.S. at 171.) To overcome the presumption of validity, plaintiff must show "no less than a specific affirmative showing of dishonesty by the applicant." Id. at 1458. Such allegations should specifically identify the portion of the warrant affidavit which is claimed to be false, and should be accompanied by affidavits or other proof. Id.
In this case, plaintiff has failed to offer any facts or evidentiary support to indicate what aspects of defendant Lee's affidavit in support of the search warrant were false, or that any of the other Individual Defendants knew or should have known that defendant Lee had submitted a false affidavit.[8] "Once a defense of qualified immunity is raised, a plaintiff must offer `particularized' allegations of unconstitutional or illegal conduct." Conrod v. Davis, 120 F.3d 92, 95 (8th Cir.1997).
Plaintiff's conclusory allegations are insufficient to overcome the presumption of validity attached to the affidavit, which on its face contained information that competent officers could reasonably believe amounted to probable cause. Further, defendant Lee, who submitted the affidavit, avers that the facts set forth therein were and remain true to the best of his knowledge, information and belief, and the other Individual Defendants aver that they did not provide any information to support issuance of the search warrant.
Accordingly, defendants Lee, Wilson, Matthews, Rueweler, Wilfong and Helton are entitled to qualified immunity on plaintiff's claims that they improperly obtained the search warrant. Defendants Wilson, Matthews, Rueweler, Wilfong and Helton are also entitled to qualified immunity on this claim because they were entitled to assume the validity of a warrant obtained by their fellow officer, defendant Lee. Morris v. County of Tehama, 795 F.2d 791, 795 (9th Cir.1986).
In addition, defendants Lee, Wilson, Matthews, Rueweler, Wilfong and Helton are entitled to qualified immunity with respect to their actions in executing the search warrant, because when an officer acts within the scope of a facially valid warrant, he or she has "acted in good faith in conducting the search." United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); see Ortiz v. Van Auken, 887 F.2d 1366, 1371 (9th Cir.1989); Rice v. Barnes, 966 F.Supp. 877, 884 (W.D.Mo.1997).

b. Particularity of Warrant.

In the Amended Complaint, plaintiff makes the conclusory assertion that the search warrant was not sufficiently particular. This assertion fails to meet the pleading standard for complaints seeking damages against government officials. Such complaints are subject to a heightened standard of pleading with sufficient precision required to put defendants on notice of the nature of the claim. Edgington v. Missouri Dept. of Corrections, 52 F.3d 777, 779 (8th Cir.1995); Brown v. Frey, 889 F.2d 159, 170 (8th Cir. *1124 1989), cert. denied, 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990). This claim is subject to dismissal on that basis.
Further, to the extent the nature of plaintiff's claim can be ascertained, it fails on the merits. In a subsequent, unverified document, plaintiff objects that the language of the warrant did not permit seizure of the currency.[9] The Fourth Amendment requires that a search warrant's language describe its objects with particularity, but this is a standard of "`practical accuracy' rather than a hypertechnical one." United States v. Beck, 122 F.3d 676, 679 (8th Cir.1997) (quoting United States v. Peters, 92 F.3d 768, 769-70 (8th Cir.1996)). "[T]he language must be sufficiently definite to enable the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Lowe, 50 F.3d 604, 607 (8th Cir.1995), cert. denied, 516 U.S. 900, 116 S.Ct. 260, 133 L.Ed.2d 183 (1995).
As set forth above, the warrant in this case authorized the defendant officers to search for and seize "Marijuana and other controlled substances and/or illegal contraband and cultivating tools." Under the Missouri Criminal Activity Forfeiture Act, RSMo. §§ 513.600 et seq. (1986), in effect at the time of the seizure, a law enforcement officer may seize any property "used or intended for use in the course of, derived from, or realized through criminal activity." RSMo. § 513.607.1. Seizure may occur without a writ of seizure and prior to the filing of a petition for forfeiture, where it is incident to a lawful search and the officer has probable cause to believe the property is subject to forfeiture and will be lost or destroyed if not seized. RSMo. § 513.607.5(2).
The Court concludes that (i) the Individual Defendants' seizure of the currency from plaintiff's residence occurred incident to a lawful search; and (ii) these defendants had probable cause to believe the currency was subject to forfeiture under the CAFA and would be lost if not seized. For these reasons, the Individual Defendants are entitled to judgment on this claim.

c. Conspiracy Claims.

The Court has liberally construed plaintiff's Amended Complaint to allege that the State Defendants conspired to provide false evidence to the state court to obtain a search warrant. In order to sufficiently plead a conspiracy under § 1983, a plaintiff must allege facts showing a meeting of the minds among the defendants alleged to have conspired to deprive plaintiff of his constitutional rights. Marti v. City of Maplewood, Mo., 57 F.3d 680, 685 (8th Cir.1995). "[T]he [plaintiff] must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Id. (citations omitted). Plaintiff's conclusory allegations of conspiracy fail to meet this standard. The fact that several individuals engaged in investigating suspected criminal activity, or held a common belief that a crime had been committed, does not establish a conspiracy. Myers v. Morris, 810 F.2d at 1454.
Further, the Court has found that the Individual Defendants are entitled to qualified immunity on plaintiff's claims that they improperly obtained and executed the search warrant. Thus, plaintiff's constitutional rights were not violated by the search. It follows as a matter of law that the State Defendants are entitled to judgment on plaintiff's claim that they unlawfully conspired to obtain and execute the search warrant. See West v. Carson, 49 F.3d 433, 436-37 (8th Cir.1995) (stating that for a civil conspiracy to be actionable, there must be some act done in furtherance of it which damaged the plaintiff). Because plaintiff's residence was not unlawfully searched, he cannot prove essential elements of a civil conspiracy claim, i.e., that defendants were acting toward an unconstitutional end, and that they caused an injury or deprivation. See Marti, 57 F.3d at 685. The State Defendants are therefore entitled to judgment on plaintiff's conspiracy claims.

d. Custom and Policy Claims.

Plaintiff alleges that defendants Iron County Sheriff's Department and Ironton *1125 Police Department had an official de facto custom, practice and policy under which they authorized and approved their officials' submission of false and perjured documents to courts in order to obtain search warrants, and under this custom and policy approved the conduct of defendant Lee in submitting a false affidavit in support of the search warrant for plaintiff's residence.
These defendants move for summary judgment on the custom and policy claims, asserting that local governmental entities may be held liable under Section 1983 only if a custom or policy caused a deprivation of constitutional rights. See Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). These defendants also assert that plaintiff failed to identify the policy claimed to be unconstitutional, and to present evidence or facts concerning the allegedly wrongful policy.
The Court has determined that all of the State Defendants are entitled to summary judgment on the merits of plaintiff's underlying search-related claims, as plaintiff's constitutional rights were not violated. It necessarily follows that plaintiff's custom-and policy-based claims against the Ironton Police Department and the Iron County Sheriff's Department must also fail. There must be a finding of liability on an underlying substantive claim before a governmental entity may be held liable for its custom or policy. See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam); Brodnicki v. City of Omaha, Nebraska, 75 F.3d 1261, 1266 (8th Cir.1996) (where police officers did not violate plaintiff's civil rights, city could not be liable under theory of inadequate training or municipal custom), cert. denied, ___ U.S. ____, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996); Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir.1994) (same).
In this case, the Court has found that the Individual Defendants did not violate plaintiff's constitutional rights in connection with obtaining and executing the search warrant. Consequently, the Ironton Police Department and the Iron County Sheriff's Department cannot be held liable, and judgment should be entered in their favor.

e. False Arrest Claim.

In Count IV, plaintiff alleges that after defendants Lee and Rueweler entered his residence pursuant to the search warrant, they "acted to unreasonably impair and interfere with, restrain and detain plaintiff from his freedom of movement and of his liberty inside and outside of his residence, resulting in effectively placing plaintiff under arrest without probable cause or articulate probable cause, or the requisite arrest warrant ..." (Amended Complaint at 4-5, ¶ 9.)
To the extent plaintiff alleges that his constitutional rights were violated while he was detained in the living room during the search, he fails to state a claim upon which relief can be granted. Plaintiff's detention in the living room of his residence was properly incident to the search. A search warrant implicitly carries with it the limited authority to detain the occupants of premises while a search is being conducted. Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); see also United States v. Patterson, 885 F.2d 483, 484-85 (8th Cir.1989) ("Police may also take appropriate action to ensure their own protection while carrying out a search warrant.")
The Court also liberally construes this count to allege Fourth and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 for arrest without probable cause. For purposes of the motion, the Court assumes that plaintiff was placed under arrest when he was handcuffed and read his Miranda rights. The State Defendants' motions do not address the arrest claim, perhaps because they have failed to afford plaintiff's complaint the liberal construction to which it is entitled. The State Defendants have raised a qualified immunity defense to plaintiff's Amended Complaint generally, and under these circumstances the Court finds it appropriate to address plaintiff's arrest claim on its own motion.
It is constitutional for "an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has *1126 committed or is committing an offense." Michigan v. DeFillippo, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); Washington v. Simpson, 806 F.2d 192, 195 n. 3 (8th Cir.1986). Defendants Lee and Rueweler are therefore entitled to judgment on this claim if they had probable cause to arrest plaintiff. Peterson v. City of Plymouth, 60 F.3d 469, 473 (8th Cir.1995).
Even if probable cause is lacking, these defendants are entitled to qualified immunity if a reasonable officer could have believed plaintiff's arrest was lawful, in light of clearly established law and the information the defendants possessed at the time. Id. (citing Hunter v. Bryant, 502 U.S. 224, 227-28, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Bridgewater v. Caples, 23 F.3d 1447, 1449 (8th Cir.1994) (internal citation and punctuation omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. (internal citation and punctuation omitted).
Thus, Lee and Rueweler are entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest plaintiff. Id. Probable cause existed if "at the moment the arrest was made ... the facts and circumstances within [the defendants'] knowledge and of which [they] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that" plaintiff had committed or was committing the crime of possession of a controlled substance. Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). This inquiry is a question of law. Bridgewater, 23 F.3d at 1449 (citations omitted).
At the time of the arrest, a confidential informant had told defendant Lee that plaintiff was recently in actual possession of a controlled substance in plaintiff's residence. Lee and Rueweler were in possession of a warrant to search plaintiff's residence for marijuana or other controlled substances. In the process of executing the warrant, these defendants discovered among other things quantities of a green, leafy substance which appeared to be marijuana, seeds which appeared to be marijuana seeds, cigarette rolling paper, a cup containing what appeared to be partially burned marijuana cigarettes, and scales.
In light of these circumstances, the Court need not determine whether probable cause existed for plaintiff's arrest. It is clear that at the time of arrest, a reasonable officer could have believed that probable cause existed to arrest plaintiff for possession of controlled substances. Therefore, defendants Lee and Rueweler are entitled to qualified immunity on plaintiff's false arrest claim.

IV. Conclusion.

For the foregoing reasons, the Court will (i) grant the DEA's motion for summary judgment in all respects and deny its motions to dismiss as moot; (ii) grant the State Defendants' motion for summary judgment in all respects; (iii) dismiss plaintiff's claims against the Individual Defendants in their official capacities; (iv) deny as moot the State Defendants' motion to dismiss and alternative motion to strike; (v) deny plaintiff's motion for summary judgment in all respects; and (vi) deny as moot plaintiff's motion to stay proceedings to permit settlement.
Accordingly,
IT IS HEREBY ORDERED that defendants United States of America and Drug Enforcement Administration's motion for summary judgment is GRANTED. [Doc. 57]
IT IS FURTHER ORDERED that defendants United States of America and Drug Enforcement Administration's motions to dismiss are DENIED as moot. [Doc. 31, 50]
IT IS FURTHER ORDERED that plaintiff's claims against defendants Wilson, Matthews, Rueweler, Wilfong, Lee, Helton in their official capacities are DISMISSED.
IT IS FURTHER ORDERED that defendants Wilson, Matthews, Rueweler, Wilfong, Lee, Helton, Ironton Police Department, and Iron County Sheriff's Department's motion for summary judgment is GRANTED. [Doc. 51]
*1127 IT IS FURTHER ORDERED that defendants Wilson, Matthews, Rueweler, Wilfong, Lee, Helton, Ironton Police Department, and Iron County Sheriff's Department's motion to dismiss and alternative motion to strike is DENIED as moot. [Doc. 52-1, -2]
IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED. [Doc. 54]
IT IS FURTHER ORDERED that plaintiff's motion to stay proceedings to discuss settlement is DENIED as moot. [Doc. 68]
An appropriate judgment will accompany this memorandum and order.

JUDGMENT
In accordance with the memorandum and order of this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be entered in favor of all defendants and against plaintiff on all aspects of plaintiff's Amended Complaint.
IT IS FURTHER ORDERED that costs are assessed against plaintiff.
NOTES
[1] The Court notes that plaintiff has provided few facts in his motion for summary judgment and his pleadings in opposition to defendants' motions. As a result, the Court has gathered the following facts primarily from the memoranda, affidavits and exhibits provided by the defendants.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Plaintiff's objections to the DEA's filing of copies of plaintiff's answers to interrogatories, which were inadvertently omitted from the DEA's memorandum in support of its supplemental motion to dismiss, are overruled.
[4] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a vehicle for allegations that persons acting under color of federal law violated an individual's constitutional rights.
[5] Pending before the Court are defendant DEA's motion to dismiss, supplemental motion to dismiss, and motion for summary judgment. The motions to dismiss include affidavits and other matters outside the pleadings. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court." Woods v. Dugan, 660 F.2d 379, 380 (8th Cir.1981) (per curiam). The Court has considered the materials attached to defendant DEA's motions to dismiss in connection with its motion for summary judgment, and will deny the motions to dismiss as moot.
[6] The applicable regulations provide that the publication must be in a newspaper of general circulation in the judicial district in which the processing for forfeiture is brought. 21 C.F.R. § 1316.75(a).
[7] A law enacted by the Missouri General Assembly takes effect ninety (90) days after the adjournment of the session at which it was enacted. RSMo. § 1.130 (1994). Section 513.647 was enacted during the first regular session of the 87th Legislature in 1993. The 1993 session of the Missouri General Assembly adjourned on May 30, 1993. (See Vernon's Missouri Legis. Serv. No. 4, p. iii.) Accordingly, § 513.647 did not become effective until August 30, 1993, more than two months after the currency at issue was forfeited by the DEA.
[8] For purposes of the instant motion, the Court does not treat plaintiff's allegations contained in pleadings that are neither verified nor signed under penalty of perjury as affidavits in response to defendants' motions. See Burgess v. Moore, 39 F.3d 216, 217-18 (8th Cir.1994).
[9] See Pl.'s Opposition to Motions to Dismiss, filed 7/31/97, at 4, ¶ 12.